UNITED STATES of America,
Plaintiff–Appellee,

v.

Christopher HUMPHRIES,
Defendant–Appellant.

No. 91–30207.

United States Court of Appeals,
Ninth Circuit.

Submitted April 8, 1992 *.

Decided April 15, 1992.

Mark Bauer, Bauer & Perron, Great Falls, Mont., for defendant-appellant.

Robert J. Brooks, Asst. U.S. Atty., Butte, Mont., for plaintiff-appellee.

Before: BROWNING, WRIGHT and FERNANDEZ, Circuit Judges.

PER CURIAM:

Christopher Russell Humphries was arrested for pointing a handgun at a man with whom he had been arguing and then firing it next to the man's head. Humphries pled guilty under 18 U.S.C. section 922(g) to possessing a firearm despite having been convicted of a felony. Humphries argues he was improperly sentenced pursuant to Sentencing Guidelines section 2K2.1(c)(2) rather than 2K2.1(a)(2).

Under the version of the Guidelines in effect in May 1991 when Humphries was sentenced, *see* 18 U.S.C. § 3553(a)(4), section 2K2.1(a)(2) provided a base offense level of 12 for defendants convicted under 18 U.S.C. section 922(g). Because Humphries' criminal history category was V, a base offense level of 12 minus two levels for acceptance of responsibility [1] would

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

1. The government does not contest the district court's reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

have resulted in a sentencing range of 21–27 months. *See* U.S.S.G. Ch. 5, Pt. A.

Section 2K2.1(c)(2) provided: "If the defendant used or possessed the firearm in connection with commission or attempted commission of another offense, apply § 2X1.1 ... in respect to that other offense, if the resulting offense level is greater than that determined above." The district court found Humphries had used the firearm in connection with an aggravated assault and accordingly applied section (c)(2). Section 2X1.1 instructed the court to apply the base offense level for the other offense—in this case, aggravated assault. The guideline for aggravated assault provided for a base offense level of 15, to which five levels were added because the gun was fired. *See* U.S.S.G. § 2A2.2(a) & (b)(2)(A). Subtracting two levels for acceptance of responsibility, Humphries' total offense level was 18, and the resulting sentencing range was 51–63 months. *See* U.S.S.G. Ch. 5, Pt. A. The court departed downward and sentenced Humphries to 48 months.

■ Humphries first contends the term "another offense" in the phrase "in connection with commission or attempted commission of another offense," U.S.S.G. § 2K2.1(c)(2), means another offense of which the defendant was convicted, rather than merely conduct that would constitute such an offense. *Cf.* U.S.S.G. § 7B1.1(a) (describing probation and supervised release violations based on "conduct constituting" a federal, state or local offense). Because he was not convicted of aggravated assault, he contends the district court erred in applying section (c)(2).

We have not hesitated to apply guidelines that require the "commission of another offense" to defendants not convicted of the conduct constituting the other offense. *See, e.g., United States v. Durham,* 941 F.2d 858, 863–64 (9th Cir.1991) (U.S.S.G. § 5K2.9 provided that "[i]f the defendant committed the offense in order to facilitate or conceal the commission of another offense," the sentencing court could depart upward; court approved up-

ward departure even though defendant had not been convicted of the other offense).

The commentary to section 2K2.1 indicates the Sentencing Commission anticipated the guideline would be used to increase sentences in cases in which the defendant used a firearm to commit a crime that otherwise could not be prosecuted under federal law:

> The firearm statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law. For example, a convicted felon may be prosecuted for possessing a firearm if he used the firearm to rob a gasoline station. In pre-guidelines practice, such prosecutions resulted in high sentences because of the true nature of the underlying conduct. The cross reference at § 2K2.1(c)(2) deals with such cases.

U.S.S.G. § 2K2.1, comment. (backg'd). It would be anomalous to hold the Commission intended the sentencing court to consider the underlying conduct only if the defendant were previously convicted of it in state court, thus limiting the reach of the federal court, when the guideline was intended to allow the continuation of the practice of extending federal jurisdiction over otherwise unreachable underlying conduct.

■ Humphries next argues that when the district court permitted the government to prove he had committed an aggravated assault by calling witnesses at the sentencing hearing to so testify, his constitutional rights to a jury trial, proof beyond a reasonable doubt, confrontation of hostile witnesses, compulsory attendance of favorable witnesses, and effective assistance of counsel were violated.

■ Not all of the procedural protections available in the guilt phase of a trial are necessary components of a sentencing hearing. *See, e.g., United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (before determining what sentence to impose, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the

kind of information he may consider, or the source from which it may come"); *United States v. Restrepo,* 946 F.2d 654, 661 (9th Cir.1991) (en banc) (the Constitution is satisfied when uncharged crimes used to increase sentences under the Guidelines are proved by a preponderance of the evidence).

In his objections to the Presentence Report, Humphries himself raised the possibility of conducting an aggravated assault "mini-trial" at the sentencing hearing; his contention he had no notice the government would call any witnesses if such a "mini-trial" was held is patently meritless. Further, Humphries did not object when the government offered to prove the assault by calling witnesses, whom Humphries thoroughly cross-examined. Humphries was not denied but was offered and refused the opportunity to call witnesses in his favor. Nothing on the record before us supports Humphries' claim he was denied effective assistance of counsel: His attorney was present throughout the hearing, fully participated in the adversarial factfinding process, and was not prevented in any way from acting as an effective advocate.

AFFIRMED.