UNITED STATES of America, Appellee,

v.

**Lawrence Gregory IRON CLOUD, Appellant.**

No. 95–1471.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1995.

Decided Jan. 31, 1996.

Richard D. Casey, Sioux Falls, South Dakota, argued, for appellant.

John Joseph Ulrich, Sioux Falls, South Dakota, argued (Karen E. Schreier, United States Attorney, on brief), for appellee.

Before McMILLIAN, BRIGHT and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Lawrence Gregory Iron Cloud appeals from a final judgment entered in the United States District Court for the District of South Dakota after he pleaded guilty to the offense of escape in violation of 18 U.S.C. §§ 751(a) and 4082(a). The district court sentenced defendant to sixteen months imprisonment to be served consecutively with a sentence previously imposed upon an unrelated criminal conviction, three years supervised release, and a special assessment of $50.00. For reversal, defendant argues that the district court erred in calculating his sentence by imposing a three-level upward adjustment pursuant to U.S.S.G. § 3A1.2(b). Because we agree that defendant was improperly sentenced, we vacate the sentence and remand the case to the district court for resentencing consistent with this opinion.

### Background

In July 1994, defendant was granted a furlough from a halfway house, where he was serving the final portion of a ten-year federal sentence imposed in 1986 for assault with a deadly weapon, destruction of government property, and use of a firearm. Defendant was granted the furlough to attend his mother's funeral on the Pine Ridge Indian Reservation. After defendant failed to return to the halfway house on July 15, 1994, as scheduled, a warrant for his arrest was issued. Defendant was charged in a one-count indictment with the offense of escape in violation of 18 U.S.C. §§ 751(a) and 4082(a).

On September 19, 1994, police officers received reports that a grey sedan, occupied by four males, was being driven in a reckless and dangerous manner in the Pine Ridge vicinity. Two on-duty police officers, Richard Greenwald and Rodney Clements, driving separate patrol cars, located the two-door grey sedan and followed it to the parking lot of a shopping center. The driver, John Wilson, parked the vehicle near the shopping center doors. At approximately the same time, Sergeant Harold Brewer, driving a third patrol car, arrived at the scene.

Officers Greenwald and Clements approached the vehicle and ordered Wilson to turn off the ignition and open his door. Wil-

son turned off the ignition but refused to open the door. Greenwald recognized the person in the back seat on the passenger side of the car as defendant. Greenwald approached the vehicle on the passenger side with his revolver drawn. As Greenwald approached the passenger side of the car, Brewer approached the driver's side. Brewer opened the driver's side door and attempted to place Wilson under arrest. Wilson resisted and Brewer placed a handcuff around Wilson's left wrist. Meanwhile, Greenwald had opened the passenger-side door and had ordered the individual in the front seat to exit the car. After the front-seat passenger exited the car, Greenwald ordered defendant to exit the vehicle with his hands up. Defendant was beginning to exit the car when Wilson started the ignition, placed the car in reverse, and accelerated.[1] Both doors were still open. Wilson's vehicle struck two police cars. Wilson then put the car in forward and almost ran into the store building. He then put the car into reverse again, and rammed the police units to knock them out of the way. The driver's side door struck Brewer, who fell to the ground. Brewer then fired two shots into the front tire on the driver's side. Wilson drove the car through the parking lot, hit a parked truck, and then drove onto the highway. Greenwald pursued Wilson's car in his patrol car. Wilson's car became disabled when it ran into the fender of Greenwald's patrol car and a concrete divider. Greenwald ran to the passenger side and pulled defendant from the car and handcuffed him. Greenwald noted in his report that defendant resisted his efforts to handcuff defendant and defendant appeared to be intoxicated. Brewer and Clements arrived and arrested Wilson, who also appeared to be intoxicated.

On November 21, 1994, defendant pleaded guilty to the charge of escape. A sentencing hearing was conducted on February 13, 1995. Referring to the paragraph in the presentence investigation report which recommended an enhancement of three levels pursuant to U.S.S.G. § 3A1.2(b),[2] the district court stated the following:

> With regard to the adjustment for role in the offense, ... there's a three-level increase there.... It says "(b) during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury."

This [Presentence Investigation] Report that is appended sets forth in pretty fair detail what went on and it does appear from the Report, as counsel for the defense argued, that it was a two-door, rather than a four-door car, although it doesn't specifically say that. But it talks about the passenger door that the other person who was in the front seat got out of and then they were trying to get the defendant out of it. "Two right side tires were blown out. He had to pull his gun to get Mr. Iron Cloud to get his hands up. Spun the tires and drove the car backwards very fast. Officer had to run so that he wouldn't get struck by the door. The Wilson car then strikes the police unit. The Wilson car almost runs into the store then. Puts it in reverse again. Then rammed the police unit, knocking him out of his way. Then the officer was almost struck by the car again when it was backing out. The officer shoots two rounds into the driver's side front tire. Wilson then drives

---

1. In his report, Officer Greenwald stated "I then started to have [defendant] exit the car with his hand (sic) up in the air when Officer Sgt. Brewer had opened the driver side door and attempted to have the *driver John Wilson* exit the car. I heard the vehicle start back up and before I could react the driver had the car in reverse and was spinning the car backwards." Brief for Appellant, Addendum at 13.

2. Section 3A1.2(b) (emphasis added) provides:
   If—

....
   (b) during the course of the offense or immediate flight therefrom, the defendant or *a person for whose conduct the defendant is otherwise accountable,* knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, *assaulted such officer in a manner creating a substantial risk of serious bodily injury,* increase by 3 levels.

around the parking-lot and then hits a pick-up truck belonging to somebody. The police then chase him down the road. Two right side tires are blown out of the car and Mr. Wilson has no control over the car. The police block it. Wilson drives into the police car and a concrete divider. Wilson's car becomes disabled. Then Mr. Iron Cloud gets pulled out and handcuffed and the officer has to use all the strength that he has to put Mr. Iron Cloud under arrest."

I don't believe that, taking the whole course of this, particularly considering earlier on, that while Mr. Iron Cloud was resisting arrest before all of this escapade with the car started, I don't think that I can find anything other than, by a preponderance of the evidence, that he is accountable for the conduct of John Wilson in the operation of that vehicle.

There was substantial risk of serious bodily injury to the police officers and others. I believe the three-level increase is applicable and I'm going to apply it as provided in [the Presentence Investigation Report.]

Sentencing Tr. at 30–31.

The district court concluded that defendant's total offense level was 10 and his criminal history category III, resulting in a range under the sentencing guidelines of ten to sixteen months. The district court sentenced defendant to sixteen months imprisonment to be served consecutively to his previous sentence, three years of supervised release, and a $50.00 special assessment. Defendant timely appealed.

## Discussion

Defendant argues that the district court improperly imposed a three-level upward sentencing adjustment pursuant to U.S.S.G. § 3A1.2(b). Defendant maintains "the District Court's findings of fact concerning [defendant's] responsibility for the erratic and impulsive conduct of John Wilson are clearly

erroneous." Brief for Appellant at 11. In other words, defendant argues that the district court clearly erred in concluding that defendant was "otherwise accountable" for Wilson's actions in attempting to flee when the officers were placing Wilson and defendant under arrest.

■ Findings by the district court for purposes of sentencing, which require no legal interpretation of a guideline term, are findings of fact and may not be overturned absent clear error. *See United States v. Goebel*, 898 F.2d 675, 678 (8th Cir.1990). "A factual finding is clearly erroneous when, although some evidence may support it, the record as a whole leaves the reviewing court with the definite and firm conviction that a mistake has been committed." *United States v. Yellow Earrings*, 891 F.2d 650 (8th Cir. 1989), *citing United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948). Thus, we consider in this appeal whether the district court clearly erred in finding that defendant was accountable for Wilson's actions in attempting to flee, which led to the assault on Officer Brewer, who was struck by the car door.[3]

The government also contends that the district court correctly found that defendant's own conduct in resisting arrest independently supported the sentencing enhancement under § 3A1.2(b). Defendant argues, in response, that the district court did not make such a finding, nor could such a finding be justified under the facts of this case. Although we agree with defendant that the district court did not make such an independent finding, *see* Sentencing Tr. at 30–31, we will assume for the sake of argument that the court did. Thus, we consider whether, upon careful review of the record in this case, it would have been clearly erroneous for the district court to find that defendant, in resisting arrest, assaulted a law enforcement officer "in a manner creating a substantial risk of serious bodily injury."

---

**3.** Defendant concedes that Wilson assaulted Officer Brewer when the car door struck Brewer. We note, however, that, even if the car door had not struck Officer Brewer, Wilson's conduct in attempting to flee involved an assault within the meaning of U.S.S.G. § 3A1.2(b). *See, e.g., United*

*States v. Stanley*, 24 F.3d 1314, 1322 (11th Cir. 1994) (affirming sentencing enhancement under § 3A1.2(b) where the defendant allegedly drove his car in such a manner as to endanger the lives of police officers who were attempting to arrest him).

*"Otherwise accountable"*

■ Defendant maintains that the record is devoid of any evidence indicating that he was responsible for Wilson's actions in attempting to flee from the shopping center parking lot. The issue of whether a defendant is "otherwise accountable" for the conduct of another under § 3A1.2(b) of the guidelines is one of first impression before this Court. We hold that, in order for conduct of others to be attributable to a defendant, within the meaning of § 3A1.2(b), there must be some evidence of causation on the part of the defendant: that is, that the defendant expressly or impliedly ordered, encouraged, or in some way assisted in the assailant's conduct.

■ A review of the record in the present case indicates that Wilson's conduct in attempting to flee the scene was not expressly or impliedly ordered, encouraged, or in some way assisted by defendant. The evidence shows that Wilson and defendant were both intoxicated at the time of the events in question. Moreover, according to Officer Greenwald's own statement, defendant was beginning to exit the car with his hands raised when Wilson started the car and threw it in reverse. Objectively-speaking, defendant's conduct did not in any way cause the driver to attempt to flee as Wilson did; nor does it support the conclusion that defendant expressly or impliedly encouraged Wilson's actions. Because Wilson was driving while intoxicated in a reckless manner, Wilson clearly had his own reasons to flee. Furthermore, while defendant might bear some responsibility for Wilson's drunken and reckless driving leading up to the initial stop in the shopping center parking lot, we think defendant's responsibility for Wilson's conduct, if any, ended once defendant attempted to surrender himself to the authorities. The evidence in this case, taken as a whole, clearly does not support a finding of a causal link between defendant and Wilson's impulsive behavior in attempting to flee. We are therefore left with the definite and firm conviction that a mistake has been made. Accordingly, we hold that, under the standard announced today, the district court clearly erred in finding that defendant is accountable for Wilson's conduct in attempting to flee.

*"In a manner creating a substantial risk of serious bodily injury"*

■ The government also maintains in this appeal that the district court found defendant's own conduct in resisting arrest to be an independent basis for imposing the three-level enhancement under § 3A1.2(b). Defendant argues, in response, that even if such a finding had been made, there is no evidence in the record to support the conclusion that he assaulted a law enforcement officer "in a manner creating a substantial risk of serious bodily injury." U.S.S.G. § 3A1.2(b).[4] We agree.

Although the record indicates that, during the initial stop, Officer Greenwald "had to pull his gun to get [defendant] to get his hands up," and later, after Wilson's car was disabled, Officer Greenwald "ha[d] to use all the strength that he ha[d]" to place defendant under arrest, Sentencing Tr. at 30, 31, there is nothing in the record to suggest that defendant ever struck, threatened, or otherwise assaulted any of the police officers in a manner creating even a significant risk of bodily injury. Upon careful review of the record in the present case, we therefore conclude that defendant clearly did not assault an officer in a manner creating a substantial risk of serious bodily injury. *Cf. United States v. Sloley*, 19 F.3d 149, 154 (4th Cir.) (enhancement under § 3A1.2(b) was appropriate where the arresting officer testified that the defendant resisted arrest, grabbed the arresting officer's gun, and pointed the

---

**4.** Application Note 5 in the commentary to § 3A1.2 states:

> 5. Subdivision (b) applies in circumstances tantamount to aggravated assault against a law enforcement or corrections officer, committed in the course of, or in immediate flight following, another offense, such as bank robbery. While this subdivision may apply in connection with a variety of offenses that are not by nature targeted against official victims, its applicability is limited to assaultive conduct against law enforcement or corrections officers that is sufficiently serious to create at least a "substantial risk of serious bodily injury" and that is proximate in time to the commission of the offense.

gun at the officer), *cert. denied,* —— U.S. ——, 114 S.Ct. 2757, 129 L.Ed.2d 873 (1994); *United States v. Fleming,* 8 F.3d 1264, 1265–66 (8th Cir.1993) (enhancement under § 3A1.2(b) was appropriate where the defendant, during flight, fired a shot at the pursuing police officer).

## Conclusion

Upon careful review, we hold that the district court's imposition of a three-level upward adjustment, pursuant to U.S.S.G. § 3A1.2(b), was based upon clearly erroneous findings of fact. Accordingly, we vacate the sentence and remand the case to the district court for the limited purpose of resentencing defendant consistent with this opinion.